UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sensient Colors, Inc.,

                Plaintiff,                **MEMORANDUM OPINION**
                                                          **AND ORDER**
     v.                                    Civil No. 07-3410 ADM/AJB

Paul Kenneth Kohnstamm, Joshua G.
Kohnstamm, Ricka Robb Kohnstamm,
and Adam Michael Kohnstamm,

                Defendants.

___

Lawrence J. Field, Esq., and Monica L. Davies, Esq., Leonard, Street and Deinard, Minneapolis, MN, argued on behalf of the Plaintiff.

John F. Stoviak, Esq., Saul Ewing LLP, Philadelphia, PA, and Jeanette M. Bazis, Esq., Greene Espel, P.L.L.P., Minneapolis, MN, argued on behalf of the Defendants.

___

## I.  INTRODUCTION

On January 31, 2008, the undersigned United States District Judge heard oral argument on Defendants Paul Kenneth Kohnstamm, Joshua G. Kohnstamm, Ricka Robb Kohnstamm, and Adam Michael Kohnstamm's ("Defendants") Motion to Dismiss [Docket No. 2]. For the reasons stated herein, Defendants' Motion is granted in part and denied in part.

## II.  BACKGROUND[1]

Plaintiff Sensient Colors, Inc. ("Sensient"), seeks to impose liability on Defendants for the clean up of an environmentally contaminated property.  The property at issue, hereinafter referred to as the "Camden Property," is located in Camden, New Jersey.  Compl. ¶ 1.  From 1920 until 1988, H. Kohnstamm & Co., Inc. ("Kohnstamm & Co."), owned the Camden Property.  Id. ¶ 32.  During that time, various hazardous substances were disposed of on the property.  Id.  In 1988, Universal Foods sought to acquire Kohnstamm & Co. without acquiring the Camden Property.  Id. ¶¶ 1, 2.  Accordingly, the parties executed an agreement whereby Kohnstamm & Co. first transferred the property to General Color, its wholly owned subsidiary.  Id.  After transferring the property to General Color, Kohnstamm & Co. then transferred the General Color stock to Kohnstamm family members, who were also shareholders of Kohnstamm & Co.  Id. ¶ 11.  By transferring the General Color stock to the Kohnstamm family members, including Defendants, Kohnstamm & Co. dissolved its parent-subsidiary relationship with General Color and thus disposed of its interest in the Camden Property.  Id.  At that point, Universal Foods acquired the Kohnstamm & Co. stock.  Id. ¶ 12.

Defendants, residents of Minnesota, remain shareholders of General Color, a New Jersey corporation.  Id. ¶¶ 6-9, 16-17.  Sensient, formerly Kohnstamm & Co., is owned by Sensient Technologies Corporation, formerly Universal Foods, and is a New York corporation.  Id. ¶ 5. Because Defendants were shareholders of Sensient's predecessor until 1988, during the time when the hazardous materials were allegedly disposed of on the Camden Property, Sensient

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

seeks to hold Defendants liable for the cost of the environmental clean-up on the Camden Property; both directly and by reverse piercing the corporate veil.  Determining this question requires a more detailed discussion of the 1988 transaction.

In late 1987, Universal Foods, Kohnstamm & Co., General Color, and the Kohnstamm family shareholders, executed a reorganization agreement and plan (the "reorganization agreement").  Id. ¶ 15; Ex. A.  The reorganization agreement defines "the Company" as Kohnstamm & Co.  Id. Ex. A at 1.  Exactly who is being referenced when the agreement refers to the "Selling Shareholders" is less clear.  The opening paragraph of the agreement defines the "Selling Shareholders" as "the shareholders of the Company who have executed this Agreement on the signature pages hereof personally or by power of attorney."  Id.  Only Paul and Richard Kohnstamm signed the agreement.  Id. at 109.  However, other language in the agreement suggests that the definition of "Selling Shareholders" is not limited to the two shareholders who signed the agreement, but rather, includes all of Kohnstamm & Co.'s shareholders.  The agreement states: "WHEREAS, the Selling Shareholders own in the aggregate approximately eighty percent (80%) of the Company's issued and outstanding Company Common Stock."  Id. at 2.  At the time of the reorganization, Paul and Richard Kohnstamm did not own eighty percent of the Kohnstamm & Co. stock.  To the contrary, Daniel Kaufman, vice president of Kohnstamm & Co., made the following representation to the New Jersey Department of Environmental Protection ("NJDEP") regarding ownership of Kohnstamm & Co. stock:

> the stock of General Color will be distributed pro rata to those stockholders of Kohnstamm who are members of the Kohnstamm family.  The family consists of Paul Kohnstamm, currently the majority owner of Kohnstamm, Richard Kohnstamm, his brother and a director of Kohnstamm, and the spouses, children and grandchildren of Paul and Richard.  This group currently owns in the

      aggregate approximately 81% of the outstanding shares of common stock of Kohnstamm.

Kaufman Supp. Aff. (Compl. Ex. C).

      Section 5.3 of the reorganization agreement reads as follows:

> The Selling Shareholders and the Company shall promptly take all necessary steps to obtain a determination(s) of [Environmental Cleanup Responsibility Act ("ECRA")] nonapplicability ("Determination") for the transactions contemplated hereby from the New Jersey Department of Environmental Protection ("NJDEP") under ECRA for all New Jersey real property.  This shall include, but not limited to, a prompt filing of a complete initial notice to the NJDEP, and a prompt application for a favorable determination.  Copies of all submissions and correspondence and other communications both to and from the Selling Shareholders and the Company which relate to the ECRA shall be promptly forwarded to Universal Foods.

Compl. Ex. A at 65.  Universal Foods required that the Selling Shareholders and Kohnstamm & Co. obtain a determination of nonapplicability of the ECRA.  If the ECRA applied to the transaction, Kohnstamm and Co. would face one of two options: (1) investigate and remediate the Camden Property before transferring it to General Color, or (2) enter into an agreement whereby General Color or the Selling Shareholders would assume the obligation to investigate and remediate the Camden Property after the transfer.  Id. ¶ 28.

      Pursuant to Section 5.3 of the reorganization agreement**,** Kohnstamm & Co. applied to the NJDEP for a determination of nonapplicability.  Kohnstamm & Co. explained to the NJDEP that the transaction contemplated the transfer of the Camden Property to General Color, then distribution of the General Color stock to the Kohnstamm & Co. shareholders on a pro-rata basis, followed by the sale of the Kohnstamm & Co. stock to a third party.  Jan. 12, 1988 Letter (Compl. Ex. C).  Kohnstamm & Co. asserted that the transfer of the Camden Property and distribution of the General Color stock were exempt from the ECRA because the transactions did

not result in a change of ownership, rather it was a corporate reorganization. Aug. 31, 1987 Letter (Compl. Ex. C). Kohnstamm & Co. specifically asserted the following:

> At the present time, beneficial ownership of the Camden and Newark facilities rests in the stockholders of Kohnstamm in proportion to their share ownership. Under the proposed transaction . . . , beneficial ownership of the industrial establishments will be spread pro-rata among the holders of the 81% of Kohnstamm stock. It follows that the controlling interest in the Camden and Newark industrial establishments will remain where it is today--in the Kohnstamm family.

Id. In response, the NJDEP issued a letter stating its determination that the transfer of the Camden Property to General Color and the distribution of the General Color stock to the Kohnstamm family shareholders was exempt from the ECRA.

In 2004, Pleasant Gardens Realty Corporation sued Sensient in a New Jersey lawsuit for damage caused to the property adjacent to the Camden Property as a result of the environmental contamination on the Camden Property. Compl. ¶ 29. In 2007, the United States Department of Justice ("DOJ") named Sensient as a defendant in an action under the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), arising from the environmental contamination on the Camden Property. Id. ¶ 31. The DOJ action is pending in the United States District Court for the District of New Jersey. Id.

In an effort to recover the costs it has incurred relating to the environmental contamination on the Camden Property, Sensient brought the instant action against Defendants, as former Kohnstamm & Co. shareholders and General Color shareholders, asserting various theories of liability. In Count I, Sensient seeks to hold Defendants directly liable under the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. § 58:10-23:11g(c). In Count II, Sensient seeks to hold Defendants liable under the Spill Act by reverse piercing the

5

corporate veil. In Count III, Sensient asserts it is entitled to contribution from Defendants under the New Jersey Join Tortfeasors Contribution Act ("Joint Tortfeasors Act") for the 2004 lawsuit. In Count IV, Sensient asserts a claim for contribution under the Joint Tortfeasors Act for the 2007 DOJ lawsuit. In Count V, Sensient asserts a claim for common law indemnification, and in Count VI asserts a claim of unjust enrichment. In Count VII, Sensient asserts a claim for contribution from Defendants under § 107(a) of CERCLA, 42 U.S.C. § 9607(a), asserting that Defendants are directly liable. Sensient also seeks to hold Defendants indirectly liable by asserting a claim to pierce the corporate veil and hold Defendants liable under CERCLA. Finally, in Count VIII, Sensient seeks declaratory judgment regarding CERCLA liability for future damages, natural resources damages, and response costs associated with the contamination on the Camden Property.

### III. DISCUSSION

**A.      Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the

face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

**B.  Piercing the Corporate Veil**

As a preliminary matter, Defendants contend that Sensient is collaterally estopped by the outcome of the New Jersey action from asserting any claims based on a veil-piercing theory. The New Jersey court granted Defendants' motion to dismiss because it lacked personal jurisdiction over Defendants and because Sensient failed to allege sufficient facts to survive a motion to dismiss on its claim to pierce the corporate veil. Bazis Aff. [Docket No. 8] Ex. A at 32, ll. 1-6; Ex. B. The New Jersey court's determination that Sensient failed to state a claim to pierce the corporate veil was dicta and does not bar Sensient from raising the issue before this Court. See Baker v. Gen. Motors Corp., 522 U.S. 222, 233 (1998) (stating that "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."); see also Pac. Intermountain Express Co. v. Haw. Plastics Corp., 528 F.2d 911, 912 (3d Cir. 1976) ("Generally, at least, any non-jurisdictional conclusion which is premised on an erroneous exercise of jurisdiction would constitute mere dicta.").

In reaching the merits of the applicability of the veil-piercing theory, the parties dispute what standard the Court should use to determine whether Sensient has properly asserted a claim

7

to pierce the corporate veil. Defendants assert that because Kohnstamm & Co. first incorporated in New York, Sensient's veil-piercing claims are properly evaluated by applying New York Law. Defs.' Mem. in Supp. of Mot. to Dismiss [Docket No. 7] at 9-10. Sensient asserts that the Court's interest in the uniform application of CERCLA among federal courts requires application of federal common law. Sensient further asserts that even if the Court were to decide to apply state law, New Jersey rather than New York law is appropriate. Sensient argues that New Jersey is the proper state law because the claims against Defendants are premised on the alter ego status of both Kohnstamm and Co. and General Color. Kohnstamm & Co. is a New York corporation but General Color is a New Jersey corporation. Sensient argues that because General Color is a New Jersey corporation, and the Camden Property is located in New Jersey, New Jersey has a greater interest in the litigation than New York.

In United States v. Bestfoods, 524 U.S. 51 (1998), the Supreme Court addressed the question of when a parent corporation may be held directly liable for the actions of its subsidiary under CERCLA. The Sixth Circuit had found that state law controlled and applied Michigan law to determine whether to pierce the veil to hold the parent company indirectly liable. Id. at 59. Because the parties had not raised the issue of indirect liability on appeal, the Supreme Court expressly declined to determine "whether, in enforcing CERCLA's indirect liability, courts should borrow state law, or instead apply a federal common law of veil piercing." Id. at 64 n.9.

Absent precedent from the Supreme Court or the Eighth Circuit on this precise issue, the Court must decide whether to apply federal common law or state law to decide Sensient's veil-

piercing claims.[2] In keeping with the Eighth Circuit's general rule that "[w]hether to pierce a corporate veil is a legal determination that . . . is governed by state law," Stoebner v. Lingenfelter, 115 F.3d 576, 579 (8th Cir. 1997), the Court will determine whether to pierce the corporate veil according to state law standards.

Having decided to apply state law, the next question is whether to apply the law of New York or New Jersey. Sensient urges the court to apply the law of New Jersey. At oral argument, Defendants' counsel stated that they would "be happy" if the Court applied New York law, New Jersey law, or federal common law. Because Defendants contend that the standard applied to Sensient's veil-piercing claims is immaterial to the result, the Court will apply New Jersey law as requested by Sensient.

New Jersey recognizes the fundamental proposition that a corporation is a separate entity from its shareholders and that the primary purpose of incorporation is the insulation of shareholders from the corporation's liabilities. State Dept. of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 164 (N.J. 1983). Piercing the corporate veil is an equitable remedy reserved for cases where it is necessary to "prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." Id. (internal citations omitted). Accordingly, under New Jersey law, there are two elements for piercing the corporate veil: (1) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent," or as applied to shareholders: that the

---

[2] The parties have not identified, and the Court could not find, any Eighth Circuit decisions specifically addressing whether state law or federal common law governs the determination of whether to pierce the corporate veil to determine indirect liability under CERCLA.

shareholders so dominated the corporation that it was a mere instrumentality; and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law," or, as applied to shareholders: that the shareholders abused the privilege of incorporation for an illicit purpose such as perpetrating a fraud. Craig v. Lake Asbestos of Que., Ltd., 843 F.2d 145, 149 (3d Cir. 1988) (applying New Jersey law).

Defendants' letter to the NJDEP requesting a determination of nonapplicability sets forth sufficient facts to make Sensient's claim to pierce the corporate veil plausible on its face. Defendants represented to the NJDEP that the 1988 Transaction was merely a reorganization because the family shareholders had been the beneficial owners of the Camden Property and had the controlling interest in the Camden Property before the transaction and would so remain after the transaction. Essentially, Defendants disregarded corporate formalities and asserted that both Kohnstamm & Co. and General Color were mere instrumentalities so that the NJDEP would issue a letter stating that the ECRA was not applicable to the 1988 Transaction. These facts are sufficient to demonstrate the plausibility of the first element in a claim to pierce the corporate veil.

As for the second element, the assertions in Defendants' letter to the NJDEP could be construed as portraying that the legal formalities of Kohnstamm & Co., General Color, and the shareholders' interests in the companies and the companies' assets were different than they actually were in order to evade the ECRA. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities . . . An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . . ." Dole Foods Co. v.

Patrickson, 538 U.S. 468, 475 (2003).  Nevertheless, Defendants represented to the NJDEP that the corporations were not distinct from the shareholders (and thus the transfer of the Camden Property from Kohnstamm & Co. to General Color was not a change in ownership but a reorganization) and that the shareholders actually owned and controlled the Camden Property—"beneficial ownership of the Camden and Newark facilities rests in the stockholders of Kohnstamm [and] . . . [u]nder the proposed transaction . . . , beneficial ownership of the industrial establishments will be spread pro-rata among the [shareholders]."  These facts are sufficient to demonstrate the plausibility of the second element in a claim to pierce the corporate veil.

Accordingly, Sensient has set forth sufficient facts to demonstrate that its claims to pierce the corporate veil are plausible on their face.

**C.     Counts I and II: Contribution under the Spill Act**

The Spill Act directs "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."  N.J.S.A. § 58:10-23.11g(c).  The definition of a "Person responsible for a discharge" includes "[e]ach owner or operator of any facility, vehicle or vessel from which a discharge has occurred."  N.J. Admin. Code § 7:1E-1.6.

Sensient asserts Defendants are liable under the Spill Act as owners of the Camden Property and rely on the statement in Defendants' letter to the NJDEP that Defendants were beneficial and equitable owners of the property.  Defendants assert that the letter to the NJDEP was submitted on behalf of Kohnstamm & Co. and not the individual shareholders such that the

assertion that the shareholders were beneficial and equitable owners of the Camden Property is not an admission by Defendants.  For the purposes of deciding Defendants' Motion to Dismiss, the Court is required to view the facts in the light most favorable to Sensient and assumes that the letter was sent on behalf of both Kohnstamm & Co. and Defendants in fulfillment of the obligation in Section 5.3 of the reorganization agreement.

The New Jersey Supreme Court has said that ownership or control over the property *at the time of the discharge* is, by itself, sufficient to hold the owner responsible under the Spill Act.  Ventron, 468 A.2d at 165 ("The subsequent acquisition of land on which hazardous substances have been dumped may be insufficient to hold the owner responsible.  Ownership or control over the property at the time of the discharge, however, will suffice.").  Sensient's allegation that the discharge occurred while Defendants were shareholders of Kohnstamm & Co., coupled with the statements made in the letter to the NJDEP regarding Defendants' ownership of the Camden Property before and after the 1988 Transaction, is sufficient to state a plausible claim that Defendants are directly liable under the Spill Act as owners of the Camden Property.

In Count II, Sensient asserts that Defendants are liable under the Spill Act by piercing the corporate veil.  Because the Court has already determined that Sensient has stated a plausible claim to pierce the corporate veil, Defendants' Motion to Dismiss Count II is denied.

**D.     Count VII & VIII--CERCLA Liability**

Sensient asserts direct liability of Defendants under CERCLA as "'owner[s]' and/or 'operator[s]'" of the Camden Property and indirect liability by piercing the corporate veil.  Defendants contend that there are no facts demonstrating they are owners because the letter to the ECRA was sent solely on behalf of Kohnstamm & Co.

The U.S. Supreme Court has provided the following explanation regarding operator liability:

> under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of the facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

Bestfoods, 524 U.S. at 66. Defendants argue that "Plaintiff's Complaint does not (and could not) allege that Defendants in any way specifically directed or actively participated in the activities that led to the alleged release of hazardous substances at the Camden Property." Defs.' Mem. in Supp. of Mot. to Dismiss at 21. Sensient asserts that the statement in the letter to the NJDEP that Defendants were equitable and beneficial owners of the facility is an admission that Defendants "controlled the Camden Property." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss [Docket No. 10] at 18. Sensient asserts that the admissions in the NJDEP letter establishes sufficient facts to survive Defendants' Motion to Dismiss.

Applying the standard delineated in Bestfoods, Sensient has stated a claim of direct operator liability against Defendants as operators of the Camden Property if Sensient has alleged facts making plausible the claim that Defendants directed the workings of, managed, or conducted the affairs at the Camden Property. Sensient has failed to allege any such facts. Assuming that the letter to the NJDEP was sent on behalf of Defendants, the letter only asserts claims of ownership but is silent on the management or operation of the Camden Property. Accordingly, Sensient's claim of liability under CERCLA against Defendants as operators of the Camden Property is dismissed.

Sensient also claims that Defendants are liable as owners of the Camden Property. Defendants argue that they "cannot be considered 'equitable' or 'beneficial' owners of property held by the corporation." Defs.' Reply Mem. in Supp. of Mot. to Dismiss [Docket No. 14] at 12. However, Defendants fail to rebut Sensient's theory that the admission in the NJDEP letter that the shareholders were equitable and beneficial owners of the Camden Property supports plausibility of Sensient's claim. As the Complaint alleges, Defendants represented to the NJDEP that the transfer of the Camden Property and General Color stock was not a change in ownership but a reorganization because the Kohnstamm family shareholders were the beneficial and equitable owners of the Camden Property before and after the 1988 Transaction. Defendants' representations to the NJDEP makes plausible Sensient's claim that Defendants are liable as owners of the Camden Property under CERCLA.

Accordingly, Defendants' Motion to Dismiss Sensient's claim that Defendants are directly liable is granted as to Sensient's claim of liability as operators of the Camden Property but denied as to Sensient's claim of direct liability as owners of the Camden Property. Regarding Sensient's claim to hold Defendants indirectly liable, Sensient has set forth sufficient facts to state a claim that Defendants may be liable as owners or operators by piercing the corporate veil.

**E.    Counts III, IV, and V**

Defendants move to dismiss Counts III, IV, and V of Sensient's Complaint. Defendants assert that Sensient's claims of contribution under the Joint Tortfeasors Act, and common law indemnification fail to present an independent theory of liability. Defendants contend that because Sensient cannot succeed on the principle claims of the Complaint, the CERCLA and

Spill Act claims, Sensient cannot succeed on its derivative claims for contribution and indemnification.

Both Sensient and Defendants agree that the viability of the principal claims under CERCLA and the Spill Act control the fate of the derivative claims at this procedural juncture. Thus, because the Court has denied Defendants' Motion to Dismiss Sensient's principal claims, the Court also denies Defendants' Motion to Dismiss Sensient's claims for contribution and indemnification.

**F.     Count VI—Unjust Enrichment as Bar by Statute of Limitations**

Defendants have asserted the alternate argument of bar by statute of limitations in support of their motion to dismiss Sensient's claim of unjust enrichment. Defendants assert that Sensient's claim for unjust enrichment is barred by the statute of limitations, which they argue began to run in 1988 with the transaction between Sensient and Kohnstamm and Co. The applicable statute of limitations in New Jersey, N.J.S.A. § 2A:14-1, provides that claims for unjust enrichment must be commenced within six years after the cause of action has accrued. "Ordinarily, a statute of limitations begins to run when all elements of a cause of action are present or, more plainly, 'from the moment of the wrong.'" Amland Props. Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1190 (D.N.J. 1992) (quoting Lopez v. Swyer, 300 A.2d 563 (N.J. 1973)). "If equity dictates, however, New Jersey will apply the 'discovery rule' which will delay the accrual of a cause of action until the injured party discovers, or by the exercise of reasonable diligence should discover, that the elements of a claim exist." Michaels v. New Jersey, 955 F. Supp. 315, 326 (D.N.J. 1996).

The pivotal inquiry for the Court is when the statute of limitations began to run. Defendants assert that it began in 1988 because "the latest date that [Sensient] could have discovered the actions which allegedly gave rise to its unjust enrichment claim in this matter was in 1988, when the prerequisites to the 1988 Transaction occurred." Defs.' Mem. in Supp. of Mot. to Dismiss at 26. Sensient responds that its claim of unjust enrichment does not arise only from the representations Defendants made to the NJDEP, but also from the fact that Defendants are now "trying to run from those representations in an effort to avoid liability." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 23. Sensient further asserts that it "could not have known that the enrichment Defendants enjoyed as a result of the 1988 Transaction was 'unjust,' until it became clear that Defendants were abandoning the responsibilities they so long ago agreed to undertake." Id.

Sensient argues that but for the representations to the NJDEP, it would have required that Defendants agree to investigate and remediate the Camden Property before executing the 1988 Transaction or it would have required Defendants to enter into an agreement whereby General Color or the Selling Shareholders would assume the obligation to investigate and remediate the Camden Property after the transfer. Compl. ¶ 28. Sensient's theory is that its claim of unjust enrichment accrued in 2004, when Sensient discovered that it had not avoided liability for the Camden Property as it sought to do when it executed the 1988 Transaction.

The question becomes whether equity dictates application of the discovery rule in this case:

> It is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered. The decision requires more than a simple

> factual determination, it should be made by a judge and by a judge conscious of the equitable nature of the issue before him [or her].

Lopez v. Swyer, 300 A.2d at 567.  Whether the equities favor the application of the strict statute of limitations or the discovery rule can be better assessed after fact discovery.  Accordingly, Defendants' Motion to Dismiss Sensient's claim of unjust enrichment is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss [Docket No. 2] is **DENIED** as to Counts One, Two, Three, Four, Five, Six, and Eight of Plaintiff's Complaint [Docket No. 1];

2. Defendants' Motion to Dismiss Count Seven of Plaintiff's Complaint is **GRANTED IN PART** and **DENIED IN PART**.

BY THE COURT:


　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 10, 2008.